**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

September 7, 2012

<u>By Hand Delivery</u>

The Honorable Barbara S. Jones
United States Circuit Court Judge
United States Courthouse
500 Pearl Street
New York, New York  10007

    Re:  ***United States* v. *Rajiv Goel*,**
          **10 Cr. 90 (BSJ)**

Dear Judge Jones:

    The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the substantial assistance that defendant Rajiv Goel has rendered in the investigation and prosecution of other persons.  In light of these facts, the Government moves, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

    On or about February 8, 2010, Goel pleaded guilty to Counts One and Two of the above-captioned Information.  Count One of the Information charged Goel with conspiring with Raj Rajaratnam and others to commit securities fraud, in violation of Title 18, United States Code, Section 371, in connection with a scheme to engage in insider trading from in or about 2007 through in or about 2009.  This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

Honorable Barbara S. Jones
September 7, 2012
Page 2

Count Two of the Information charged Goel with securities fraud, in violation of Title 15, United States Code Sections 78j(b) and 78ff, and Title 18, United States Code, Section 2, in connection with a scheme to defraud by engaging in insider trading with respect to shares of Intel Corporation ("Intel"). This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

I.  **Goel's Background**

Goel was born in Mumbai, India. In or about January 1982, Goel came to the United States. In or about 1983, he graduated from the Wharton School of the University of Pennsylvania with a master's degree in business administration. From in or about 1983 through in or about 1986, he worked as a financial analyst and then a portfolio manager of fixed income securities for Charter Security Life, which was acquired by Metropolitan Life. In or about 1986, Goel returned to India to start his own business and then he worked for Bank of America as a lending officer. In or about 1988, Goel returned to the United States to work for Metropolitan Life again. Approximately three months later, Goel worked for Bank of America again. In or about 1996, Goel returned to India to work for a start-up company and then a large industrial conglomerate.

In or about January 2000, Goel returned to the United States to work in Intel's treasury department. Goel's job was to analyze the financial benefits and costs of proposed deals by Intel Capital, a unit of Intel, which principally made strategic investments in start-up companies on behalf of Intel. Intel promoted Goel from manager to senior manager and then to director. In or about 2006, Intel promoted Goel to managing director in Intel's treasury department. As one of the three managing directors in that department, Goel supported the deals proposed and executed by Intel Capital. Goel reported to Intel's treasurer who reported to Intel's Chief Financial Officer.

On or about October 16, 2009, Goel, Rajaratnam, and others were arrested by complaint on charges of insider trading.

Honorable Barbara S. Jones
September 7, 2012
Page 3

## II.     Goel's Criminal Conduct

### A.     Goel's Relationship With Raj Rajaratnam

Goel met Rajaratnam at Wharton.  Following graduation, Goel and Rajaratnam kept in touch, and they became close friends.  On two occasions, Goel's family and Rajaratnam's family went on vacations together.  In the context of their close friendship, Rajaratnam helped Goel financially in three ways.  First, in or about 2005, Rajaratnam loaned Goel approximately $100,000.  Rajaratnam never asked for the money back, and Goel never repaid that loan.  Second, in or about 2006, Rajaratnam gave Goel a gift of $500,000.  Goel told Rajaratnam that Goel's father was elderly and that Goel needed money to keep his father's apartment within the family.  Goel opened a bank account in Switzerland to receive the money, and Rajaratnam transferred the money to that account.  Goel asked Rajaratnam about investing the money in Galleon, but Goel never did.  Goel used part of the money to make emergency repairs on his home in California.  Goel eventually transferred the remainder of the money to an account in India.  Goel failed to disclose his foreign bank accounts on his tax returns and thus failed to pay taxes on the income from the money that he received from Rajaratnam.  Since his arrest, Goel has filed amended tax returns.  Goel brought the foreign accounts to the attention of the Government as part of his cooperation.

Finally, from in or about 2005 through in or about October 2009, Rajaratnam executed trades in Goel's Charles Schwab account.  Goel gave his online log-in identification and password for his Charles Schwab account to Rajaratnam, and Rajaratnam made approximately $700,000 to $800,000 in that account for Goel.  Among other transactions in the account, Rajaratnam purchased and sold stock in ATI Technologies based on material nonpublic information in connection with the acquisition of that company, illegally earning approximately $17,000 in Goel's account; Rajaratnam purchased and sold stock in @Road based on material nonpublic information in connection with the acquisition of that company, illegally earning approximately $19,700 in Goel's account; Rajaratnam purchased and sold stock in Hilton Hotels Corporation based on material nonpublic information in connection with the acquisition of that company, illegally earning approximately $78,000; and Rajaratnam purchased and sold stock in PeopleSupport based on material nonpublic information in connection with the acquisition of that company, illegally earning approximately $151,949.  There is no evidence Goel

Honorable Barbara S. Jones
September 7, 2012
Page 4

provided inside information in connection with Rajaratnam's trading in Goel's Charles Schwab account.

### B. Goel's Illegal Agreement With Rajaratnam

From in or about 2007 through in or about 2009, Goel repeatedly violated his fiduciary and other duties of confidentiality to Intel and certain third-parties by disclosing secret information to Rajaratnam. Goel understood that Rajaratnam was trading based in part on Goel's information and that Goel was violating the law by disclosing the information to Rajaratnam.

### C. Goel's Illegal Tips To Rajaratnam In 2007 and 2008

In or about April 2007, Goel learned material, nonpublic information about Intel's quarterly earnings before Intel publicly announced its results and shared that information with Rajaratnam. In turn, Rajaratnam traded based on that information. Goel learned about Intel's quarterly earnings from Alex Lenke, an employee in Intel's investor relations department who worked on the presentation of Intel's quarterly results to the public. Initially, Goel learned negative information from Lenke about Intel's quarterly results--specifically relating to the company's revenue and gross margin. Based on that information, Rajaratnam shorted Intel stock, betting that the price of the stock would decline. A few days later, Goel learned positive information from Lenke about Intel's quarterly results--specifically relating to Intel's business outlook. Based on that new information, Rajaratnam reversed course, covered his short position, and purchased Intel stock. When Intel disclosed its results, Rajaratnam sold the stock and illegally earned approximately $2,481,271.

In 2008, on multiple occasions, Goel learned material, nonpublic information about Intel's investment in Clearwire Corporation ("Clearwire"), also a public company, and shared that information with Rajaratnam. In turn, Rajaratnam traded Clearwire stock based on that information. Certain conversations between Goel and Rajaratnam in 2008 were captured over a court-authorized wiretap on Rajaratnam's cellular telephone. During those conversations, Goel disclosed material, nonpublic information about Intel's investment in Clearwire and the investment of other companies in Clearwire. Based on Goel's information about Clearwire, Rajaratnam illegally earned approximately $851,724.

Honorable Barbara S. Jones
September 7, 2012
Page 5

      Goel understood that Rajaratnam was trading based on Goel's illegal tips about Intel and Clearwire.

      After Goel tipped Rajaratnam about Intel's quarterly earnings in April 2007 and about the Clearwire transaction in 2008, Rajaratnam asked Goel about Intel's business and financial performance from time-to-time.  Although Goel did not have access to Intel's quarterly earnings as he did when he learned about it from Lenke in April 2007, Goel told Rajaratnam what Goel had heard from internal discussions at Intel.

Honorable Barbara S. Jones
September 7, 2012
Page 6

### III. Goel's Cooperation

Goel substantially helped the Government secure a conviction in one the most significant and high-profile insider trading trials in history, United States v. Raj Rajaratnam. At Rajaratnam's trial, Goel's testimony was essential. Goel provided highly significant testimony regarding Rajaratnam's loan and gift of money to Goel, Goel's illegal tips to Rajaratnam, Rajaratnam's trades in Goel's Charles Schwab account, and Goel's understanding that Rajaratnam was trading based in part on Goel's illegal tips. Significantly, following his arrest, Goel realized that his best hope of regaining some self-respect and the respect of his family, correcting his wrongs from the past, accepting responsibility for his criminal conduct, and moving forward was to assist the Government in its investigation and prosecution of others. From the first day of Goel's cooperation through the present, Goel has been a very important, straightforward, and extraordinarily helpful cooperating witness. Goel never hesitated to provide complete information to the Government about his relationship with Rajaratnam, his illegal tips to Rajaratnam, and his many conversations with Rajaratnam. Notably, it could not have been easy for Goel to testify at Rajaratnam's criminal trial given Goel's long-standing, close friendship with Rajaratnam and his family.

#### A. The Timing Of Goel's Cooperation

Goel's cooperation was very timely. Within weeks following his arrest and prior to the Government making any determination regarding whether it would sign Goel up to a cooperation agreement, Goel provided helpful information to the Government relating to Rajaratnam. For example, Goel provided information relating to his bank accounts and Rajaratnam's transfer of money to them before the Government determined that it would sign him up to a cooperation agreement. Within a few months of his arrest, Goel agreed to cooperate pursuant to a cooperation agreement and testify at Rajaratnam's criminal trial. Because Goel's cooperation started many months before Rajaratnam's trial, the Government was able to maximize Goel's knowledge and information well in advance of the beginning of the trial. For example, Goel provided the Government with copies of his account statements from his bank account in Switzerland, which the Government offered into evidence at Rajaratnam's criminal trial. Given bank secrecy laws in Switzerland, it would have been difficult for the Government to obtain these records without Goel's cooperation. The records corroborated Goel's

Honorable Barbara S. Jones
September 7, 2012
Page 7

account of his prior relationship with Rajaratnam, and proved to be very helpful during the trial.

Goel's timely cooperation warrants special mention and recognition. Very few individuals involved in Rajaratnam's insider trading schemes agreed to cooperate, even though many were also caught on a wiretap disclosing and/or receiving inside information from Rajaratnam. In the world of Rajaratnam and his co-conspirators, cooperation was sadly viewed as a fundamental breach of trust to one another, and cooperators were viewed by many Galleon employees and other members of Rajaratnam's criminal schemes as "ratting out" a trusted friend and thus a lowly, feeble, and pathetic action to take. This negative view of cooperation made the Government's investigation into insider trading schemes at Galleon all the more difficult.

### B. Goel's Proffers And Meetings With The Government

Goel attended proffers with the Government on December 18, 2009, January 5, 2010, January 19, 2010, and January 21, 2010 before the Government signed him up as a cooperating witness. During those proffers, Goel was straightforward about his criminal conduct, and the conduct of others. Goel did not understate or overstate his criminal activities; Goel's statements were fully corroborated by wiretap recordings, documents, witness statements, and other evidence; and Goel's contrition and full acceptance of responsibility was clear.

Following his guilty plea on February 8, 2010, the Government spoke with Goel in person and by phone on numerous occasions. The undersigned and other Assistant U.S. Attorneys met with Goel in person on many occasions to obtain evidence and information in preparation for one of the most significant insider trading trials in history, United States v. Raj Rajaratnam. Rajaratnam became the modern poster child for illegal insider trading in the asset and money management community, and there was intense and widespread public attention to the investigation, the charges, and the subsequent trial.

During those meetings with the Assistant United States Attorneys and FBI agents, Goel was always truthful and cooperative. Goel did not complain when the Government wanted to speak with him on multiple occasions, about traveling to New York from his home in California to meet with federal prosecutors and FBI agents, about reviewing thousands of documents, about reviewing wiretap recordings and transcribing them, and answering

Honorable Barbara S. Jones
September 7, 2012
Page 8

the same questions over and over again.  During the course of his cooperation in connection with the Rajaratnam trial, Goel spent over 20 days and tens of hours reviewing documents and wiretap recordings at the Government's request.  In short, prior to and during Rajaratnam's trial, Goel was the ideal cooperating witness who met with the Government without hesitation and without reservation.

### C. Goel Proffered About Criminal Conduct For Which He Was Not Charged Originally

Prior to his guilty plea, Goel informed the Government about significant criminal conduct for which he was not charged by complaint.  When Goel was charged by complaint on or about October 16, 2009, the Government had collected certain evidence that Goel had tipped Rajaratnam about Intel's quarterly earnings in the past.  However, without Goel's cooperation, the Government did not have sufficient evidence to charge Goel or Rajaratnam for that conduct and charged Goel only with tipping Rajaratnam based principally on wiretap recordings from in or about March 2008 through in or about October 2008.

With Goel's cooperation, the Government was able to obtain sufficient evidence to charge both Goel and Rajaratnam with Goel's illegal tips to Rajaratnam regarding Intel's quarterly earnings in or about April 2007.  Goel provided the necessary missing information about the sequence of events in April 2007 regarding Goel's initial tip to Rajaratnam that Intel's quarterly earnings were falling short of expectations, and Goel's subsequent tip that Intel's outlook was positive.  In providing this information beyond what Goel was charged with by complaint, Goel demonstrated that he was willing to provide complete and accurate information to the Government about his criminal conduct even though it carried risks that Goel would have to admit to far greater criminal conduct than the Government either knew or would be able to prove without that cooperation.

### D. Goel's Trial Testimony And The Successful Prosecution Of Raj Rajaratnam

Goel was a highly significant witness at the criminal trial of Rajaratnam.  Rajaratnam was charged with five counts of conspiracy to commit securities fraud in connection with five separate insider trading conspiracies.  One of those counts related to a conspiracy between Rajaratnam, Goel, and others during which Goel provided Rajaratnam with nonpublic information

Honorable Barbara S. Jones
September 7, 2012
Page 9

relating to Intel and Clearwire, in breach of Goel's fiduciary and other duties of confidentiality, so that Rajaratnam could trade based, in part, on that information at the expense of average ordinary investors.  Five substantive counts--Six, Seven, Eleven, Twelve, and Fourteen--related to information provided by Goel to Rajaratnam, or Rajaratnam's trades in Goel's Charles Schwab account.  Accordingly, of the fourteen counts against Rajaratnam, six of them were based in part on Goel's testimony. This made Goel's testimony a very significant aspect of the Government's criminal case against Rajaratnam.

Goel was the Government's second of three cooperating witnesses who testified.  Goel testified over four days from March 22, 2011 through March 28, 2011.  Goel's testimony was interrupted so that the Government could call two other witnesses for scheduling reasons.

During his testimony, Goel was contrite, truthful, and direct about his criminal conduct.  Goel explained his criminal conspiracy with Rajaratnam in a chronological and concise fashion.  Goel discussed his relationship with Rajaratnam from the time that he graduated Wharton with Rajaratnam in 1983 through their arrests on October 16, 2009.  Goel explained how he and his family became close to Rajaratnam and Rajaratnam's family over time, how they went on vacations together, and how Rajaratnam loaned $100,000 to Goel without ever asking for the money back, and later gave $500,000 to Goel to help Goel's family.  Subsequently, Rajaratnam asked Goel for material, nonpublic information about Intel, and Goel provided it to Rajaratnam.  Goel explained how he violated Intel's policies and procedures by disclosing nonpublic information to Rajaratnam, and his motives for helping Rajaratnam out of friendship.  Goel also explained how he had violated U.S. tax laws by failing to disclose the income from the money that he had received from Rajaratnam to the Government.

Goel further took the jury through the illegal tips that he gave to Rajaratnam about Intel's quarterly earnings in April 2007 and Intel's investment in Clearwire in 2008.  With respect to his unlawful disclosures of Intel's quarterly earnings, Goel described what he remembered while being careful not to overstate or understate what he recalled.  Goel was precise and consistent with respect to what he remembered.  The contemporaneous telephone records, the contemporaneous Galleon trading records, and the witness testimony of Alex Lenke, among other things, corroborated Goel's recollection of his tips.  With

Honorable Barbara S. Jones
September 7, 2012
Page 10

respect to his unlawful disclosures of Intel's investment in Clearwire in 2008, Goel described what he remembered about his conversations with Rajaratnam, and Goel took the jury through multiple wiretap recordings of conversations between him and Rajaratnam relating to Goel's tips.  Goel's testimony was essential in explaining these wiretap calls.  Portions of the calls were difficult to understand without Goel's testimony.

In addition, Goel explained clearly and concisely for the jury key wiretap recordings between him and Rajaratnam relating to Rajaratnam's trading in PeopleSupport stock in Goel's Charles Schwab account.  These calls were very difficult to understand without Goel's testimony.  They were part of the basis for two of the substantive counts against Rajaratnam relating to Rajaratnam's trading in PeopleSupport stock.

Finally, Goel explained Rajaratnam's trading in Goel's Charles Schwab account.  This was a critical piece of the Government's evidence against Rajaratnam.  It reflected one of Rajaratnam's methods for paying sources of information while avoiding detection by regulatory and other governmental authorities.  Goel testified about several trades which Rajaratnam executed in Goel's brokerage account, and Goel described certain statements that Rajaratnam made to him relating to those trades.  The latter testimony in several instances provided important corroborating evidence for other insider trading counts against Rajaratnam unrelated to Goel's tips.

Goel's testimony was powerful.  Goel was credible, precise, and fully corroborated.  Although Rajaratnam's counsel attacked Goel's credibility on cross-examination, it is readily apparent from the jury's guilty verdicts on both the conspiracy and substantive counts relating to Goel's illegal tips to Rajaratnam and Rajaratnam's trades in PeopleSupport stock in Goel's brokerage account that the jury credited Goel's testimony and rejected Rajaratnam's counsel's arguments to the contrary.

Prior to Goel's cooperation: (1) The Government had collected some evidence regarding Goel's illegal tips to Rajaratnam about Intel's quarterly earnings in April 2007, but not sufficient evidence to charge Rajaratnam and Goel; (2) The Government had collected some evidence relating to Rajaratnam's trades in Goel's brokerage account, but not sufficient evidence to understand exactly how and when Rajaratnam executed trades in the account; and (3) The Government had collected some evidence relating to Goel's relationship with Rajaratnam, but not

Honorable Barbara S. Jones
September 7, 2012
Page 11

sufficient evidence to understand all the contours of that relationship and its connection with Goel's illegal tips. Accordingly, without Goel's cooperation: (a) It is unlikely the Government would have been able to charge Goel and Rajaratnam with Goel's illegal tips to Rajaratnam relating to Intel in April 2007; and (b) The Government would not have been able to present a complete account of the relationship between Goel and Rajaratnam during Rajaratnam's criminal trial.  With Goel's cooperation, and the extensive corroboration for his recollection of the facts, the Government was easily able to present additional charges to the grand jury and obtain an indictment and subsequent conviction against Rajaratnam for his trading in Intel stock in April 2007, and present extensive evidence of Rajaratnam's trading in Goel's brokerage account based on material, nonpublic information.

Finally, Goel testified against one of his closest friends who had provided him with substantial financial assistance over many years.  Although Goel did not express it or complain about it, he had to overcome the emotional aspect of providing assistance and trial testimony that helped demonstrate his close friend was guilty of multiple counts of securities fraud.

**IV.   Conclusion**

Goel's cooperation with the Government was essential in one of the most important insider trading trials in history. Goel provided significant evidence of his conspiracy with Rajaratnam in the trial of <u>United States</u> v. <u>Raj Rajaratnam</u>.  That evidence included critical testimony of Goel's illegal arrangement to provide material, nonpublic information to Rajaratnam; Rajaratnam's trades in Goel's brokerage account; and a detailed explanation of the meaning of numerous wiretap conversations between Rajaratnam and Goel.

Based in part on Goel's cooperation, Rajaratnam was convicted.  The successful prosecution of Rajaratnam has received widespread public attention and, as a result, should deter certain people in the financial services industry who would otherwise be tempted to engage in similar misconduct.

Identifying, uncovering, and prosecuting insider trading crimes is difficult.  By their very nature, criminal insider trading conspiracies are secretive, and the participants, who generally are highly intelligent and resourceful, are able to

Honorable Barbara S. Jones
September 7, 2012
Page 12

conceal their activities well and create false explanations for their trading based on material, nonpublic information. Cooperators like Goel are incredibly important in order to prosecute these cases. Even with wiretap evidence or other recordings, cooperators provide context and explanation for conversations which might otherwise be vague or unclear at times.

    Goel's significant and timely cooperation has provided substantial assistance to the Government in the investigation and prosecution of one of the most high profile defendants convicted of illegal insider trading in history.  Therefore, this Court should sentence Goel in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


By:    /s/ Reed Brodsky
     Reed Brodsky/Richard Tarlowe
     Assistant United States Attorney
     Tel.:  (212) 637-2492/2330

cc:  U.S. Probation Officer
    David M. Zornow, Esq.
    Lawrence S. Spiegel, Esq.